Ray GARDINELLA, Plaintiff,

v.

GENERAL ELECTRIC COMPANY, Defendant.

Civ. A. No. C–90–0090–O(J).

United States District Court, W.D. Kentucky, Owensboro Division.

Oct. 1, 1993.

Philip C. Kimball, Louisville, KY, for plaintiff.

Edwin S. Hopson, Wyatt, Tarrant & Combs, Louisville, KY, Richard T. Brown, III, General Elec. Co., Labor & Employment, Cincinnati, OH, for defendant.

## MEMORANDUM OPINION AND ORDER

JOHNSTONE, District Judge.

This is an employment discrimination action brought pursuant to the Kentucky Civil Rights Act, K.R.S. Ch. 344. The court has diversity jurisdiction. The matter is before the court on the defendant's motion for summary judgment. For the reasons stated below the motion is overruled.

The plaintiff Ray Gardinella alleges that during his employment by the defendant General Electric Company, his direct supervisor, Karen Gross, discriminated against him in the terms, privileges and conditions of his employment because he refused to continue a sexual relationship with her. He further alleges that GE retaliated against him

for opposing Gross's conduct. He seeks compensation for lost wages and other benefits of employment, suffered humiliation, embarrassment, personal indignity, mortification of feelings, and mental and emotional distress.

## I

In resolution of Gardinella's claims before the Workers' Compensation Board for physical injuries allegedly resulting from Gross' excessive work demands, the plaintiff entered a settlement and release of "any and all other claims, known and unknown, for injuries during [his] employment with GE." GE argues that any claims for physical or psychological "work disability" and lost wages are barred by the agreement and by the exclusivity provisions of the Kentucky Workers' Compensation Act codified at K.R.S. § 342.690.

■ K.R.S. § 342.690 does not preclude claims for damages brought pursuant to the Kentucky Civil Rights Act, which provides a specific and independent cause of action to remedy employment discrimination. *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814 (Ky.1992). However, the rules regarding election of remedies may preclude recovery under the Civil Rights Act for an injury previously compensated under the Workers' Compensation Act. *Id.* at 819. That is not the case here. The settlement agreement compensated Gardinella only for physical injuries to his right thumb and wrist. He does not seek compensation for those injuries in this action.

■ Secondly, the settlement agreement does not release GE from liability for any damages recoverable under the Civil Rights Act. Under Kentucky law, the scope of a release is determined by the intent of the parties, as evidenced by the language of the entire instrument and the surrounding facts and circumstances. *Leitner v. Hawkins*, 223 S.W.2d 988 (1949); *Overberg v. Lusby*, 727 F.Supp. 1091 (E.D.Ky.1990); *aff'd*, 921 F.2d 90 (6th Cir.1990). The agreement containing the release in question was entered to settle claims brought before the Workers' Compensation Board, and it is enforceable only if approved by an administrative law judge in accordance with the terms of the Workers' Compensation Act. K.R.S. § 342.265. Read in context, the release only precludes claims brought pursuant to the Workers' Compensation Act.

## II.

■ GE next argues that Gardinella cannot prove a *prima facie* case of sex discrimination under the Kentucky Civil Rights Act because he cannot show that GE is "that unusual employer who discriminates against the majority."

Gardinella alleges that he is a victim of "quid pro quo" sex discrimination actionable under K.R.S. § 344.040(1). That statute states in pertinent part:

It is an unlawful practice for an employer: (1) To fail or refuse to hire, or to discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment, because of the individual's disability, race, color, religion, national origin, sex, age between forty (40) and seventy (70), or because the individual is a smoker or nonsmoker, as long as the person complies with any workplace policy concerning smoking;

.   .   .   .   .

Kentucky courts have not addressed a quid pro quo sexual harassment claim in any reported opinion. However, because the language of § 344.040(1) tracks the language in Title VII of the Federal Civil Rights Act, 42 U.S.C. § 2000e–2, Kentucky courts interpret the statute consonant with federal interpretation of Title VII. *Meyers* at 821 (recognizing "hostile working environment" sexual harassment claim as defined in *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986)).

To prevail on a claim of quid pro quo sex discrimination under Title VII a plaintiff must prove:

1) that the employee was a member of a protected class; 2) that the employee was subjected to unwelcomed sexual harassment in the form of sexual advances or requests for sexual favors; 3) that the harassment complained of was based on

sex; 4) that the employee's submission to the unwelcomed advances was an express or implied condition for receiving job benefits or that the employee's refusal to submit to the supervisor's sexual demands resulted in a tangible job detriment; and 5) the existence of respondeat superior liability.

*Kauffman v. Allied Signal, Inc., Autolite Division,* 970 F.2d 178 (6th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992).

Because Gardinella is male, GE urges the court to decide this case not under *Kauffmann,* but under a modified version of the *McDonnell Douglas* test used by this Circuit in reverse race discrimination cases brought under Title VII. Under this test, a white plaintiff may establish a *prima facie* case of race discrimination by showing that "background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority." *Murray v. Thistledown Racing Club, Inc.,* 770 F.2d 63 (6th Cir.1985).

*Murray* and *McDonnell Douglas* do not apply in quid pro quo sexual harassment cases. The *McDonnell Douglas* test was developed to allow a minority plaintiff to establish a *prima facie* case of discrimination without direct evidence of discriminatory intent by showing that he was treated differently than similarly situated nonminority employees, from which discrimination can be inferred. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Parker v. Baltimore & O.R. Co.,* 652 F.2d 1012 (6th Cir.1981). The test must be altered in reverse discrimination cases because absent unusual circumstances, disparate treatment does not warrant an inference of discrimination against majority employees. *Parker* at 1017.

In a quid pro quo sexual harassment case a plaintiff does not seek to prove discrimination by inference, but by direct evidence of a supervisor's unwelcome sexual advances. Gardinella's sole burden in opposing summary judgment is to raise a genuine issue of material fact as to each of the *Kaufmann* elements, which together constitute a statutory violation. *See Kauffman* at 186. He has met this burden by citing his own deposition testimony describing his rejection of his supervisor's sexual advances and her subsequent retaliation. He does not have to prove that GE has discriminated against other male employees because he is not asking the court to infer discrimination from disparate treatment.

*Kaufmann*'s requirement of membership in a "protected class" does not alter this analysis. "Any individual," male or female, is protected against sex discrimination in employment under the plain language of the Kentucky Civil Rights Act. K.R.S. § 344.-040(1). Requiring a male plaintiff who produces direct evidence of sex discrimination to jump through an additional hoop would derogate the clear intent of the statute. *See McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976) (Title VII language prohibiting discharge of "any individual" because of race prohibits racial discrimination against whites and nonwhites *upon the same standards* ). Gardinella has set forth a triable claim under the Act.

### III.

■ GE also argues that Gardinella cannot show that GE took any adverse employment action against him, because GE reduced his workload when he complained that he was overburdened; assigned him to a different supervisor when he first complained of harassment; gave him "light duty" work when he became physically unable to perform his normal duties; placed him on extended medical leave when suitable work was no longer available; held his position open through the date required by its contract with Gardinella's union; and even now keeps his name on a recall list so that he is eligible for reemployment when physically able.

■ The court must analyze GE's argument under the fourth element of *Kaufmann,* which requires the employee to show that his refusal to submit to the supervisor's sexual demands resulted in a "tangible job detriment." The argument fails because GE relies on actions it took to remedy adverse employment conditions or "job detriments"

already imposed upon Gardinella by his supervisor, allegedly because he rebuffed her sexual advances. An employer's response after learning of an employee's harassment may negate liability in a "hostile environment" case, but it is not relevant under the quid pro quo theory, which imposes strict liability on the employer for the conduct of supervisory personnel who exercise significant control over an employee's firing, hiring, or conditions of employment. *See Kaufmann* at 182–186. Gardinella's supervisor undisputedly had such control.

## IV.

Finally, GE argues that Gardinella has no evidence to support his claim of retaliation. Gardinella's response to GE's summary judgment motion reveals that his claim of retaliation is merely a restatement of his allegation that he suffered job detriment after rebuffing his supervisor's sexual advances. This claim is addressed under the *Kaufmann* analysis and need not be discussed separately.

In conclusion, Gardinella states a valid claim of quid pro quo sexual harassment under the Kentucky Civil Rights Act, and the claim is not precluded by the Kentucky Workers' Compensation Act or by Gardinella's settlement agreement with GE.

IT IS THEREFORE ORDERED that GE's motion for summary judgment is OVERRULED.